IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KARA R. DAVENPORT, on behalf of herself, and all others similarly situated, | ) ) ) |
| Plaintiffs, | ) Case No. ) |
| v. | ) **JURY DEMANDED** ) |
| BLUE CROSS AND BLUE SHIELD ASSOCIATION, an Illinois corporation, and SCOTT SEROTA, individually, | ) ) ) ) |
| Defendants. | ) ) |

**COLLECTIVE AND CLASS ACTION COMPLAINT**

Plaintiff, Kara R. Davenport ("Davenport"), individually, and on behalf of herself and all others similarly situated, known and unknown, complains against Defendants Blue Cross and Blue Shield Association ("Association") and Scott Serota ("Serota") ( collectively, "Defendants") as follows:

**Introduction**

1. This is an action to recover unpaid straight time and overtime compensation and applicable damages, interest, attorneys' fees, and costs under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL"), the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* ("IWPCA"), and the City of Chicago Minimum Wage Ordinance ("Ordinance") for Davenport and other current and former "Consultants" or similarly titled positions employed by the Association. Defendants pay their Consultants or similarly titled positions 37.5 hours per workweek regardless of how many hours they work and regardless of whether they work more than forty (40) hours in any given

workweek. Additionally, Defendants engage in a scheme in which they classify the Consultants or similarly titled positions as exempt from the overtime requirements of the FLSA, the IMWL, and the Ordinance despite the Consultants not meeting the overtime exempt tests of the FLSA, the IMWL, or the Ordinance.

2. Davenport, on behalf of herself and others similarly situated, seeks to recover unpaid straight time wages, and unpaid overtime wages they are owed as a result of Defendants' illegal payroll practices. from three (3) years before the date this Complaint was filed until entry of judgment in this matter (the "Relevant Time Period") but who were not paid straight time and overtime wages. Attached as <u>Exhibit A</u> is Davenport's Consent Form. Defendants knowingly misclassified Davenport and others similarly situated as overtime exempt in order to avoid having to pay overtime wages and straight time wages.

## Jurisdiction and Venue

3. This Court has original jurisdiction over Davenport's FLSA overtime claim pursuant to 29 U.S.C. §216 and 28 U.S.C. §1331. This Court has supplemental jurisdiction over Davenport's IMWL, IWPCA, and Ordinance claims pursuant to 28 U.S.C. §1367.

4. Venue and personal jurisdiction are proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants conduct business in the Northern District of Illinois and the conduct complained of occurred within this district.

## Parties

5. At all relevant times, Davenport has been a resident of Chicago Heights, Cook County, Illinois.

6. The Association is an Illinois corporation with its principal place of business located

at 225 North Michigan Avenue, Chicago, Illinois 60601. The Association conducts and transacts business within the State of Illinois and within this judicial district.

7. Serota is a corporate officer and the Chief Executive Officer and President of the Association. In these capacities, Serota is involved in the day-to-day business operation of the Association, and has:

    a. authority to hire and fire employees;

    b. authority to direct and supervise the work of employees;

    c. authority to sign on corporate checking accounts, including payroll accounts; and

    d. authority to make decisions regarding wage and hour classifications, employee compensation, and capital expenditures.

8. At all relevant times, Serota acted and had responsibility to act on behalf of and in the interests of the Association in devising, directing, implementing, and supervising the wage and hour practices and policies relating to Association employees.

9. At all relevant times, Defendants have employed Davenport and each have been an "employer" within the meaning of the FLSA, the IMWL, the IWPCA, and the Ordinance.

10. At all relevant times, the Association has been an enterprise within the meaning of 29 U.S.C. §203(r) of the FLSA.

11. At all relevant times, the Association has been an enterprise engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. §203(s)(1)(A)(i) of the FLSA because it has had employees engage in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have moved in or were produced for commerce by any person. At all relevant times, the Association had,

and continues to have, at least a gross volume of sales, made, or done business in an amount of at least $500,000.00 within the meaning of 29 U.S.C. § 203(s)(1)(A)(ii) of the FLSA.

## Facts

12. The Association is a national association of approximately 36 independent, community-based and locally operated BlueCross BlueShield companies ("Licensees") to whom the Association has licensed the sale of products and services under the BlueCross Blue Shield names. The Licensees provide health insurance coverage to approximately 107 million members. The Association owns and manages the BlueCross BlueShield trademark and names in more than 170 countries and territories around the world. The Association also grants licenses to independent companies to use the trademarks and names in an exclusive geographic area.

13. The Association provides its Licensees with various network reports that depict the geographic accessibility and product coverage of BlueCross BlueShield health care providers (*e.g.*, doctors, hospitals, laboratories, etc.). Licensees use these reports for sales, retention of current members, and repricing of contract renewals related to the sale of health insurance coverage.

14. Davenport commenced employment with the Association in 2013.

15. In 2016, Davenport's job title became "Associate Consultant - Network Reporting Services," a title she has held continuously since then.

16. At all relevant times, the Association also employed other employees with the job titles "Associate Consultant - Network Reporting Services, "Consultant - Network Reporting Services," and "Senior Consultant - Network Reporting Services." Over the past three years, Davenport and these other consultants performed their job duties from the Association's office at 225 North Michigan Avenue, Chicago, Illinois 60601, and from their respective homes.

Davenport and other consultants live in Chicago and or in Cook County.

17. At all relevant times, Defendants classified Davenport as "exempt" from the overtime provisions of the FLSA, the IMWL, and the Ordinance.

18. At all relevant times, Davenport's pay remained the same every week, regardless of how many hours she worked.

19. At all relevant times, Defendants classified all other Associate Consultants - Network Reporting Services, Consultants - Network Reporting Services, and Senior Consultants - Network Reporting Services were classified by Defendants as "exempt" from the overtime provisions of the FLSA, the IMWL, and the Ordinance.

20. At all relevant times, the pay of all other Associate Consultants - Network Reporting Services, Consultants - Network Reporting Services, and Senior Consultants - Network Reporting Services remained the same every week, regardless of how many hours they worked.

21. At all relevant times, Davenport's primary duty was the generation of network reports.

22. For example, Davenport often produced a "GEO Report" requested by Licensees. In order for Davenport to produce a GEO Report, the Licensee would electronically provide Davenport with an Excel file consisting of zip codes of employees who work for a current or prospective insurance customer. Davenport would import the zip codes into a software program provided by the Association. The software program, in turn, generates a report in PDF format showing the health care providers available to the employees within the zip codes provided to Davenport by the Licensee. This report shows, for example, the health care provider access

around employees' homes.

23. By way of further example, Davenport often produced a "Disruption Analysis Report."

24. In general, the Disruption Analysis Report is a method of network analysis that correlates historical provider utilization and claims experience for a group of employees to the health care providers in a different network. The Disruption Analysis Report is used by Licensees to determine how many employees in an employer health plan will have their care disrupted by changing networks.

25. Davenport generated the Disruption Analysis Report by running through a software program data showing all the claims an employer paid to various health care providers on behalf of their employees, and then delivering back the same claims file showing which of the health care providers listed are in the BlueCross BlueShield network and which are not, accompanied by a summary report breaking down the claims file by category.

26. Davenport created the GEO Reports and the Disruption Analysis Reports by using data provided to her and plugging the data into pre-existing, formatted templates so that Licensees could use the resulting reports in their business operations.

27. Davenport was expected to complete her work within 37.5 hours each workweek.

28. However, throughout her employment, Davenport regularly worked in excess of 40 hours per workweek.

29. For example: The week of May 18, 2020, Davenport worked a minimum of 51.5 hours; the week of May 11, 2020, Davenport worked a minimum of 55 hours; the week of May 3, 2020, Davenport worked a minimum of 61 hours; the week of April 27, 2020, Davenport

worked a minimum of 59 hours.

30. Regardless of the number of hours Davenport worked each workweek, Defendants paid Davenport for only 37.5 hours per workweek, for a total of only 75 hours per two-week pay period. Therefore, Defendants failed to pay Davenport straight time for hours worked between 37.5 and 40, in addition to failing to pay Davenport overtime wages for hours worked in excess of 40 in a workweek.

31. Because of the number of reports Davenport was required to generate each workday, she regularly worked through her meal period. For example, she worked through her meal period multiple time during the weeks of March 9, 2020.

32. In addition to working Monday through Friday, Davenport worked on weekends. For example, she worked the weekend of Saturday, March 21 and Sunday, March 22, 2020.

33. Similar to Davenport, the primary duty of the other employees bearing "consultant-type" titles in Network Services was the generation of network reports using data provided to them and plugging the data into pre-existing, formatted templates so that Licensees could review and apply the resulting reports.

34. For example, Consultants and Senior Consultants generate "Provider Count Reports" when a Licensee wants to know how many health care providers are in a network. Using data provided by the Licensee and an Association-provide software program, the consultant plugs in data and generates a report showing a provider's "heartbeat" - that is, counting just one time a health care provider appears in the network as opposed to counting the number of locations at which the health provider offers services.

35. Consultants and Senior Consultants generate "Provider Count Reports" by using

data provided to them and plugging the data into pre-existing, formatted templates so that Licensees could use the resulting reports in their business operations.

36. Similar to Davenport, the other employees bearing "consultant-type" titles in Network Services were expected to complete their work within 37.5 hours each workweek.

37. Similar to Davenport, throughout their employment these employees bearing "consultant-type" titles in Network Services regularly worked in excess of 37.5 and regularly worked in excess of 40 hours per workweek.

38. Similar to Davenport, regardless of the number of hours the other employees bearing "consultant-type" titles in Network Services t worked each workweek, Defendants paid them for only 37.5 hours per workweek, for a total of only 75 hours per two-week pay period. Therefore, Defendants failed to pay these similarly situated employees straight time for hours worked between 37.5 and 40, in addition to failing to pay them overtime wages for hours worked in excess of 40 in a workweek.

39. Davenport complained to the Association about not being paid for all hours worked, but to no avail. For example, complained to her supervisor, Jason Zasada, Manager Network Supporting Services ('Zasada") around the time of her 2019 mid-year review that she was working a tremendous number of hours and not being paid for these hours. Zasada responded by telling Davenport that she was an exempt employee who could not be paid overtime wages.

40. The Association knew that Davenport and other consultants were not properly classified as overtime exempt and also knew that Davenport and the other consultants were working more than 37.5 hours per workweek and in excess of 40 hours per workweek.

Davenport and the other consultants were required to electronically input their time and electronically send their time sheets to Zasada every other week. Zasada , in turn, was required to review the time sheets, and, if he approved the time sheets, send them to payroll so that Davenport and the other consultants would be paid for their time worked. Additionally, Zasada had access to the report Davenport and the other consultants delivered to Licensees and the date and time the reports were delivered to the Licensees. A review the report delivery time shows that reports were being generated throughout the workday and well into the late evening and even past midnight.

      41.      The work performed for Defendants by Davenport, and by the similarly situated employees bearing "consultant-type" titles in Network Services required no capital investment, nor did the work include managerial responsibilities or the exercise of meaningful independent judgment and discretion as primary duties.

      42.      For example, Davenport, and the similarly situated employees bearing "consultant-type" titles in Network Services did not have the authority to interpret or implement management policies or operating practices, and the work they performed did not require them to interpret or implement management policies or operating practices.

      43.      The work performed for Defendants by Davenport, and by the similarly situated employees bearing "consultant-type" titles in Network Services did not include hiring, firing, or disciplining other employees.

      44.      The work performed for Defendants by Davenport, and by the similarly situated employees bearing "consultant-type" titles in Network Services is the production of analytical reports. This activity does not directly relate to the management or general business operations

of the Association or its customers; rather, the activity falls on the production side of the staff versus production dichotomy found in 29 C.F.R. § 541.202(a).

45. As an experienced business, Defendants knew or recklessly disregarded the fact that Davenport and the other similarly situated employees bearing "consultant-type" titles in Network Services were working in excess of 37.5 and 40 hours per workweek, were primarily performing non-exempt duties, and that Defendants were illegally failing to pay them for hours worked in excess of 37.5 and for overtime wages in excess of hours worked in excess of 40 in a workweek.

## FLSA Collective and Class Action Allegations

46. Davenport brings the claims set forth in Count I, alleging violations of the FLSA, as an opt-in representative or collective action on behalf of herself and an **"FLSA Overtime Class,"** consisting of all "Consultants," "Associate Consultants," "Senior Consultants," "Consultants" or similarly titled workers who worked for the Association between July 17, 2017 and July 17, 2020 and who worked in excess of 40 hours in a workweek.

47. Davenport brings the claims set forth in Count II alleging violations of the IMWL overtime provisions, as a Rule 23 Class Action on behalf of herself and an **"IMWL Overtime Class,"** consisting of all "Consultants," "Associate Consultants," "Senior Consultants," or similarly titled workers who worked for the Association between July 17, 2017 and July 17, 2020 and who worked in excess of 40 hours in a workweek.

48. Davenport brings the claims set forth in Count III alleging violations of the IWPCA, as a Rule 23 Class Action on behalf of herself and an **"IWPCA Wage Class,"** consisting of all "Consultants," "Associate Consultants," "Senior Consultants," or similarly titled

10

workers who worked for the Association between July 17, 2017 and July 17, 2020 and who were not paid for all hours worked between 37.5 and 40 in a workweek.

49. Davenport brings the claims set forth in Count IV alleging violations of the Ordinance overtime provisions, as a Rule 23 Class Action on behalf of herself and an **"Ordinance Overtime Class,"** consisting of all "Consultants," "Associate Consultants," "Senior Consultants," or similarly titled workers who worked for the Association between July 17, 2017 and July 17, 2020 and who worked in excess of 40 hours in a workweek.

50. The classes defined above satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b).

51. The Rule 23 classes described above are so numerous and geographically dispersed that joinder of all members is impractical, and the disposition of their claims in a class action will provide substantial benefits to both the parties and the Court. On information and belief, at lease 40 "Consultants," "Associate Consultants," "Senior Consultants," or similarly titled workers worked over 40 hours per workweek without being paid overtime premium pay or all straight time pay due them.

52. Common questions of law and fact predominate over individual issues affecting only individual class members. The common questions of law and fact include, among others, the following:

   a. Whether Defendants denied Davenport and the putative class members overtime premium pay for hours worked in excess of 40 in a workweek.

   b. Whether Defendants denied Davenport and the putative class members straight time pay for hours worked between 37.5 and 40 in a workweek.

53. Davenport will fairly and adequately protect the interests of all class members.

Her claims are typical of the claims of all class members. Her interests in obtaining monetary relief for Defendants' violations of the class members' rights is consistent with and not antagonistic to those of any person within the classes.

54. Davenport has retained counsel competent and experienced in complex and class action litigation.

55. A class action is superior to other methods fro the fair and efficient adjudication of the controversy alleged in this Complaint. Class action treatment will permit a large number of similarly situated persons to prosecute their relatively modest, common claims in a single forum simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individual actions would require.

56. This Court is not likely to encounter difficulties that would preclude it from maintaining this case as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. Individualized litigation also would present the potential for inconsistent or contradictory judgments.

## Count I - Violation of the FLSA - Overtime Claim
**Jury demanded**

57. Davenport incorporates all preceding paragraphs as if fully stated herein.

58. Defendants' conduct violates §207(a)(1) of the FLSA, and Defendants' unlawful conduct is widespread, repetitious, and consistent, affecting all consultants in Network Services, or those employees with similar titles.

59. Defendants' conduct is willful and in bad faith, and has caused significant damages to Davenport and those similarly situated.

60. Notice of this action should be sent to all similarly situated consultant and

employees with similarly-titled positions. There are numerous similarly situated current and former employees of Defendants who have been denied appropriate compensation in violation of the FLSA who would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. These similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

## PRAYER FOR RELIEF

Davenport and all those similarly situated pray that this Court enter judgment in their favor and against Defendants, and further:

a. Certify this case as a collective action pursuant to 29 U.S.C. § 216(b);

b. Order Defendants to file with this Court and furnish to Plaintiffs' counsel a list of all FLSA Class Members consisting of all consultant and persons with other similarly-titled positions paid on a salary basis that worked for the Association between July 17, 2017and the present;

c. Authorize Plaintiffs' counsel to issue notice at the earliest possible time to FLSA Class Members, informing them that this action has been filed, of the nature of the action, and of their right to opt into this lawsuit;

d. Declare and find that the Defendants willfully violated the overtime provisions of the FLSA;

e. Order Defendants to pay the full amount of wages due each Plaintiff for work in excess of 37.5 in a workweek, plus other statutory relief;

f. Order Defendants to pay the full amount of wages due each Plaintiff for work in excess of forty (40) hours in a workweek, at one and one-half times their regular rate of pay, and an amount equal to the unpaid wages for liquidated damages and pre-judgment and post-judgment interest on the unpaid wages;

g. Award reasonable attorneys' fees and costs incurred in prosecuting this claim, pursuant to 29 U.S.C. §216 and/or other applicable laws;

h. Award such other relief as this Court deems just and proper

## Count II - Violation of the IMWL - Overtime Claim
**Jury demanded**

61. Davenport incorporates all preceding paragraphs as if fully stated herein.

62. Defendants' conduct violates §4a.(1) of the IMWL, 820 ILCS 105/4a, and Defendants' unlawful conduct is widespread, repetitious, and consistent, affecting all consultants, or those employees with similar titles.

63. Defendants' conduct is willful, repeated, and with reckless disregard of the overtime requirements of the IMWL, and in bad faith, and has caused significant damages to Davenport and those similarly situated.

## PRAYER FOR RELIEF

Davenport and all those similarly situated pray that this Court enter judgment in their favor and against Defendants, and further:

a. Certify this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ;

b. Appoint Davenport as the representative of the IMWL Class;

c. Appoint the undersigned counsel as class counsel;

d. Declare that the action complained of herein violate 820 ILCS 105/4a;

e. Award Davenport and putative class members unpaid wages due as provided by the IMWL;

f. Award pre-judgment interest on the back wages in accordance with 815 ILCS 205/2;

g. Award penalties in the amount of 2% on all unpaid wages for each month the unpaid wages remain delinquent, pursuant to 820 ILCS 105/12(a);

h. Award reasonable attorneys' fees and costs in this action as provided by the IMWL;

i. Award such other relief as this Court deems just and proper.

### Count III - Violation of the IWPCA - Wage Claim
Jury Demanded

64. Davenport incorporates all preceding paragraphs as if fully stated herein.

65. Defendants conduct violates the IWPCA and their unlawful conduct is widespread, repetitious, and consistent, affecting all consultants, or those employees with similar titles.

66. Defendants' conduct is willful, repeated, and with reckless disregard of the wage payment requirements of the IWPCA, and in bad faith, and has caused significant damages to Davenport and those similarly situated.

### **PRAYER FOR RELIEF**

Davenport and all those similarly situated pray that this Court enter judgment in their favor and against Defendants, and further:

a. Certify this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ;

b. Appoint Davenport as the representative of the IWPCA Class;

c. Appoint the undersigned counsel as class counsel;

d. Declare that the action complained of herein violate 820 ILCS 115;

e. Award Davenport and putative class members unpaid wages due as provided by the IMWL;

f. Award pre-judgment interest on the back wages in accordance with 815 ILCS 205/2;

g. Award penalties in the amount of 2% on all unpaid wages for each month the unpaid wages remain delinquent, pursuant to 820 ILCS 105/12(a);

h. Award reasonable attorneys' fees and costs in this action as provided by the IMWL;

i. Award such other relief as this Court deems just and proper.

### **Count VI - Violation of the Ordinance - Overtime Claim**
### **Jury Demanded**

67. Davenport incorporates all preceding paragraphs as if fully stated herein.

68. Defendants' conduct violates the Ordinance.

69. Defendants' unlawful conduct is widespread, repetitious, and consistent, affecting all consultants, or those employees with similar titles.

70. Defendants' conduct is willful, repeated, and with reckless disregard of the overtime requirements of the Ordinance, and in bad faith, and has caused significant damages to Davenport and those similarly situated.

## **PRAYER FOR RELIEF**

Davenport and all those similarly situated pray that this Court enter judgment in their favor and against Defendants, and further:

a. Certify this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ;

b. Appoint Davenport as the representative of the Ordinance Overtime Class;

c. Appoint the undersigned counsel as class counsel;

d. Declare that the action complained of herein violate Chicago Municipal Code § 1-24-040;

e. Award Davenport and putative class members unpaid wages due as provided by the Ordinance;

f. Award pre-judgment interest on the back wages in accordance with Chicago Municipal Code § 1-24-110;

g. Award penalties in the amount of three times the amount of all unpaid wages, pursuant to Chicago Municipal Code § 1-24-110;

h. Award reasonable attorneys' fees and costs in this action as provided by the Ordinance;

i. Award such other relief as this Court deems just and proper.

Dated: July 17, 2020                                           Respectfully submitted,
                                                                                                                          KARA R. DAVENPORT

By:    /s/ Margherita M. Albarello
        One of her attorneys

Margherita M. Albarello, Esq.
ARDC# 6187374
Di Monte & Lizak, LLC
216 W. Higgins Road
Park Ridge, IL 60068
(847) 698-9600
Fax: (847) 698-9624
malbarello@dimontelaw.com

ATTORNEYS FOR PLAINTIFF AND THE
<u>PUTATIVE COLLECTIVE AND CLASS</u>